IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

DAVID E. WITHNELL                      )
and LORA D. WITHNELL,                  )
                                       )
                Plaintiffs,            )    TC-MD 130392C
                                       )
        v.                             )
                                       )
DEPARTMENT OF REVENUE,                 )
State of Oregon,                       )
                                       )
                Defendant.             )    **FINAL DECISION**

        The court entered its Decision in the above-entitled matter on March 21, 2014.  The court

did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days

after its Decision was entered.  The court's Final Decision incorporates its Decision without

change.

        Plaintiffs appeal Defendant's assessments dated May 21, 2013, for the 2009 and 2010 tax

years.  A trial was held in the Oregon Tax Courtroom in Salem Oregon, on February 5, 2014.

Gerald Hoots (Hoots), CPA, appeared for Plaintiffs.  Lora Withnell (Lora),[1] her neighbor John

Hoffmann (Hoffmann), and Jeremy Morrison, a local sheep ranch foreman originally from New

Zealand, testified on behalf of Plaintiffs.  Ron Graham (Graham) appeared on behalf of

Defendant.  Graham and Silvia Camacho-Scyoc testified on behalf of Defendant.  Plaintiffs'

Exhibits 4-1, 9-1, 9-2, 10-1, 11-1, 14-1, 16, 20-1, 20-2, and 27-1, were received without

objection.  Defendant's Exhibits B-1, B-2, B-4, B-9, B-11, B-13, B-14, C-2, C-3, C-6, C-10, E-1,

G-4, H-1, J-1 to J-8, and K-1, K-2, and K-4, were received without objection.

_____

        [1] When referring to a party in a written decision, it is customary for the court to use the last name.
However, in this case, the court's Decision recites facts and references to two individuals with the same last name,
Withnell.  To avoid confusion, the court will use the first name of the individual being referenced.

## I.  STATEMENT OF FACTS

The appeal involves expenses Plaintiffs claimed on their 2009 and 2010 joint tax returns stemming from a sheep dog training activity operated by Plaintiff Lora Withnell.  The activity was operated under the business name LDW Investments Inc.  (Def's Exs B at 4, 11.)

According to the testimony, Lora grew up on a 40 acre ranch in Central Oregon, and cattle were raised on that ranch.  Lora testified that the family did have dogs, but there was no testimony or claim that the dogs were used as working animals; they appear, instead, to have been pets.  Lora grew up and went to college and acquired a nursing degree.  She is married to a local businessman who operates a successful automotive dealership.

According to the testimony and documentary evidence, Lora has a great affection for animals, and a particular fondness for working with sheep dogs.  Lora testified that she derives a great deal of pleasure working with the dogs but also insisted that her sheep dog activity was profit oriented.  Lora's passion is expressed in part in a document Defendant submitted, written by Lora and dated September 30, 2010.  (Def's Ex K at 1.)  Lora begins by writing: "I started my journey of a lifetime [] ending up at Brigand's Hideout, just 6 years ago.  A good friend of mine took me up there for the first time [] I was nervous [] I had no idea what I was doing.  All I knew was that working my border collie on sheep was what I loved doing."  (*Id*.)  Lora goes on to write about one particular experience at Brigand's Hideout:

> "I was the only soul there for the first time in my history of visiting and working sheep there. I had the place all to myself [] and where my first visit was filled with fear and the wonderment [] today was filled with awe of how far my dogs have come. I did not need anyone watching over me. I was not worried that anything would go wrong [] and my thoughts were on the beauty of my dogs [] the gifts of the sheep [] and the lessons unfolding for the day. * * * * * I know I can not fully express my gratitude to Brigand's  * * * how it empowered me to follow my dreams. What a great day [] to take a close look at the roots of my passion."

(*Id*. at 2.)

According to her testimony, for the tax years at issue (2009 and 2010), Lora was involved in a sheep dog operation that used sheep dogs and sheep, and which had multiple objectives. Lora testified that her primary business purpose was teaching people how to work with dogs. Lora elaborated by stating that she teaches her students how to work with and train their dogs, and "trial" them. Another aspect of Lora's sheep dog activity is training and trialing her own dogs. The court understands the term "trial" to refer to sheep dog competitions where the dogs and their handlers compete against other teams of dogs and handlers maneuvering sheep. At one point, Lora testified that her focus is training the dogs, but that she needs sheep for that training, and, when the sheep get older, they are "culled" and sold.

Lora testified that she began working with sheep sometime around 2003. According to the sworn testimony, Lora initially purchased a particular breed of sheep (which she identified as "Kahtidin"), because they had a type of hair that did not need shearing and their tails did not need to be docked (*i.e.*, cut). Lora testified that she encountered certain problems with those sheep. The problems involved disease, and revenue when sold.

Lora testified that she initially had problems with certain diseases, some of which appears to have been due to the fact that the sheep were kept on land that was wet part of the year and the moisture caused the sheep to develop problems with their hooves. As for the problems with the breed, Lora testified that she learned that Kahtidin sheep were less profitable over time, as explained more fully below.

Lora testified that she responded to the health problems by shifting to a "closed stock" operation to decrease the likelihood of disease. That activity involved buying rams and breeding them with ewes she already owned, and then raising her own lambs. She also started pulling the sheep off the fields during the wet winter months and feeding them dry feed (grain and hay).

Penning the sheep was also better for farm field management practices because it kept the sheep from damaging the fields when they were wet. According to the testimony, penning the sheep also facilitates the growth of field grass, which the sheep eat when allowed to graze, because sheep damage the ground and young grasses if allowed to walk on it during the rainy season.

As for the profitability problem, Lora testified that she discovered that the Kahtidin sheep she was raising were not desirable in the market at the time of sale because they are smaller than other sheep and sell for less, as older culled sheep typically sell by the pound. Also, Lora concluded that other breeds of sheep were not only bigger, but had wool that could be sheared and sold for additional revenue.

Lora was questioned about the number of sheep she owned. Lora testified that the number fluctuated, apparently from between 40 to 80 sheep. Lora testified that the requirements for farm use special assessment, a program that reduces property taxes, required her to have at least five sheep per acre, so she needed to have at least 45 sheep to maintain her special assessment.

Plaintiffs live in Salem, Oregon. Lora conducted her sheep dog training activities on approximately nine acres of land in Jefferson, a small town near Salem. According to her testimony on cross-examination, Lora bought the acreage in Jefferson in 2005 for approximately $225,000. No documents related to that purchase were offered as evidence. Lora does not have a paying job, and there was no testimony or other evidence of passive earnings by Lora. Lora also uses a neighbor's three acres for her sheep during certain times of the year. Both she and her neighbor Hoffmann so testified.

Plaintiffs submitted a written document indicating that a reasonable asking price in January 2014 for the nine-acre property Lora used to train her dogs was between $249,000 and

$289,000. (Ptfs' Ex 27 at 1.) That document is an email written by an individual named Lee Klampe (Klampe) who appears to be in the real estate business. (*Id.*) Klampe indicates that his list price estimate is based on two sales and one listing. However, Klampe qualifies his potential list price, stating "I do not claim to be a [sic] authority." (*Id*.)

Lora testified that when she bought the property it "needed a lot of work." Lora testified that she put in quality underground electric fencing to contain the dogs in certain areas, and fenced and cross-fenced the property. Plaintiffs also installed a number of gates. (*See* Ptfs' Ex 20 at 1.) Lora testified that she also installed at least four sheep pens: a 60 foot round pen for early training of dogs; a 70 by 100 foot pen, a 150 by 100 foot pen; and a 300 by 200 foot pen. Plaintiffs also erected a large barn, and installed a well for water. Lora further testified that a tractor was purchased to maintain the property, and some related accessories, including a mower deck or brush hog, a seeder, a manure spreader, and a scraper (all farm tractor implements), and two 4-wheel drive all terrain vehicles. According to the testimony and documentary evidence, several vehicles were used in conjunction with Lora's dog training activity. (Ptfs' Exs 9 at 1, 2, 14 at 1.) Plaintiffs' 2010 depreciation schedule lists a "2001 3 / 4 to DODGE PU" acquired in December 2005 and a "2010 DODGE CARAVAN" acquired in February 2010. (Ptfs' Exs 9 at 1, 2.) A "Vehicle Appraisal" submitted into evidence by Plaintiffs dated January 24, 2014, presents a value estimate for two Dodge trucks allegedly used for the ranch activity; one is a 1988 model 4-wheel drive regular cab pick-up and the other is a 2009 model 4-wheel drive mega cab pick-up. (Ptfs' Ex 14 at 1.) There was virtually no testimony related to the use of those vehicles. On cross-examination, Lora responded to a question by Graham by stating that it was the 2009 pick-up that she slept in. Lora did not elaborate. According to Lora's testimony and Plaintiffs' exhibits, Plaintiffs also purchased, or at least used, two to four trailers (the testimony

was two; the equipment price list Plaintiffs introduced into evidence at trial lists four trailers) for hauling the sheep and a hay elevator to get hay to the loft in the barn, a number of gates, feeders, wheelbarrows, a porta-potty, and other farm-related items, plus at least four dogs. (Ptfs' Exs 9 at 1, 2; 20 at 1, 2.)

According to the evidence, Lora owns at least six dogs, four of which were purchased between 2008 and 2011 for $150, $5,594.04, $1,650, and $1,000. (Def's Ex H at 1.) The two remaining dogs were the result of Lora's dog breeding. (*Id*.) Lora testified that the dogs are kept at the family home rather than at the nine-acre ranch.

Lora testified that she gained experience in raising sheep and training dogs by taking classes on raising lambs, an online class, talking frequently with a local well known sheep farmer, and talking with a woman in Eugene described by Lora as knowledgeable about sheep. Lora testified that she also learned about training dogs by reading books and going to clinics that taught her how to better communicate with her students. Lora also allowed an experienced dog trainer to conduct clinics on her property, testifying that she learned a lot by watching and asking questions. Lora testified on redirect that when she first began her business, she paid some consultants to come out to her property. Lora did not elaborate. There was also some testimony about Lora and a nationally recognized sheep dog expert creating several sheep dog training videos available for sale in DVD format, plus a more recent creation of an online internet training program Lora developed with the help of a local film maker. Very little testimony was presented about the more recent technological (DVD and internet) developments and they appear to have begun after 2010, the last of the two years at issue in this appeal. Plaintiffs submitted a 2012 federal Schedule C for Rocking Dog Productions LLC that identifies the "principal

/ / /

business * * * product or service" to be "video production," and reports a net profit that year of $5,483. (Ptfs' Ex 11-1.)

Lora testified that she does not have a formal business plan. Hoots stated that Lora's plan was in her head, and that Lora constantly altered her operations to improve her business, a process Hoots described as morphing. Lora did make some adjustments as explained above.

Lora's advertising was minimal. Plaintiffs' report approximately $1,200 in advertising in 2009 and $375 and 2010. (Def's Exs B at 4, 11.) There was no testimony regarding that advertising (what the money was spent on). The parties agree that there are no signs at the property identifying the dog training business. Lora did set up a webpage in 2005, but according to her own testimony, that website was not updated much, if at all, until perhaps a year or two before trial. There was some testimony at trial about a "blog" Lora maintains, but the information regarding that site was minimal, came out during cross-examination, and excerpts from the blog were read to Lora by Graham, but not introduced into evidence. The courtroom exchange revealed that the blog has relatively few subscribers and that much of the information was either personal (*e.g.*, relating to Lora's emotional well-being, etc.) or unrelated to dog training (*e.g.*, football scores).

Lora's sheep dog training activity has never generated a net profit; expenses for the six year period from 2005 to 2010 have exceeded income. Gross receipts between 2005 and 2010 were $35,020 and the net loss after expenses (including depreciation) for the first six years was $263,753. (Def's Ex B at 1.) For the two tax years at issue, 2009 and 2010, Plaintiffs reported total gross revenue from Lora's sheep dog operation as follows: gross receipts and sales of $7,088 and $6,230, respectively, and expenses of $39,775 and $40,350, respectively, for annual net losses of $32,687 in 2009 and $34,120 in 2010. (Def's Ex B at 1, 4, 11.) It is Plaintiffs'

position that the business has morphed over time, and as Lora has gained experience, she has

begun generating more income. Hoots argued that in 2012 Lora's video business, which is a

segment of the dog training business, generated a profit and it is expected that the business will

soon become profitable. Plaintiffs did submit a 2012 federal Schedule C for Rocking Dog

Productions LLC showing a net profit of approximately $5,500 from "video productions." (Ptfs'

Ex 10-1.) Plaintiffs filed another 2012 federal Schedule C for LDW Investments, Inc. that

reported a net loss of $18,735 from Lora's "dog training" activities in 2012. (Ptfs' Ex 11-1.)

## II. ANALYSIS

The issue in this case is whether Plaintiffs' sheep dog training activity was an activity not

engaged in for profit under IRC section 183.[2] The code and regulations preclude deductions "for

expenses incurred in connection with activities which are not engaged in for profit," except as

provided in IRC section 183. Treas Reg § 1.183-2(a).

A.  *General overview of the law*

IRC section 183(a) provides the general rule that if an individual engages in an activity,

and "if such activity is not engaged in for profit, no deduction attributable to such activity shall

be allowed under this chapter except as provided in this section."

Under section 183, if the activity is not engaged in for profit, the deductibility of

expenses is limited to the amount of any profits. IRC section 183(b)(2); *see also Gallo v. Dept.

of Rev.*, TC-MD No 011022F, WL 21675927 at *3 (July 8, 2003).

> "The determination whether an activity is engaged in for profit is to be made by
> reference to objective standards, taking into account all of the facts and
> circumstances of each case. Although a reasonable expectation of profit is not
> required, the facts and circumstances must indicate that the taxpayer entered into
> the activity, or continued the activity, with the objective of making a profit. In

---

[2] The court's references to the Internal Revenue Code (IRC) and accompanying regulations are to the 1986 code, and include updates applicable to 2010.

determining whether such an objective exists, it may be sufficient that there is a small chance of making a large profit. * * * In determining whether an activity is engaged in for profit, greater weight is given to objective facts than to the taxpayer's mere statement of his intent."

Treas Reg 1.183-2(a); *see also Comm'r v. Groetzinger*, 480 US 23, 35, 107 S Ct 980 (1987) ("to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not qualify.").

Allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). The burden of proof in the Oregon Tax Court is a preponderance of the evidence and falls upon the party seeking affirmative relief. ORS 305.427. In this case, Plaintiffs are the party seeking affirmative relief and they therefore bear the burden of proof.

A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

The Code regulations, specifically IRC section 1.183-2(b), set forth the relevant factors the court considers in determining whether an activity is engaged in for profit. *See Boyer v. Commissioner*, 69 TC 521, 537 (1977). (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar

activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount

of occasional profit, if any, which is earned; (8) the financial status of the taxpayer; and

(9) whether elements of personal pleasure or recreation are involved.   Treas Reg 1.183-2(b).

B.      *Business or not-for-profit activity under IRC section 183?*

Treasury Regulation section 1.183-2(b) states, "[i]n determining whether an activity is

engaged in for profit, all facts and circumstances with respect to the activity are to be taken into

account.  No one factor is determinative in making this determination."  The factors listed in the

regulation are non-exhaustive.  (*Id*.)

1.      *Manner in which taxpayer carries on the activity*

> "The fact that the taxpayer carries on the activity in a businesslike manner and
> maintains complete and accurate books and records may indicate that the activity
> is engaged in for profit.  Similarly, where an activity is carried on in a manner
> substantially similar to other activities of the same nature which are profitable, a
> profit motive may be indicated.  A change of operating methods, adoption of new
> techniques or abandonment of unprofitable methods in a manner consistent with
> an intent to improve profitability may also indicate a profit motive."

Treas Reg § 1.183-2(b)(1); *see also Knudsen v. Comm'r* (*Knudsen*), TC Memo 2007-340, 94

TCM (CCH) 461 at 466 (2007), WL 3406853 (Nov 15, 2007).

> "While a taxpayer need not maintain a sophisticated cost accounting system, the
> taxpayer should keep records that enable the taxpayer to make informed business
> decisions.  For a taxpayer's books and records to indicate a profit motive, the
> books and records should enable a taxpayer to cut expenses, increase profits, and
> evaluate the overall performance of the operation."

*Knudsen*, 94 TCM (CCH) 2007-340, WL at *10 (internal citations omitted).  "[I]f there is a lack

of evidence that the taxpayer's records were utilized to improve the performance of a losing

operation, such records generally do not indicate a profit motive."  *Sullivan v. Comm'r*, TC

Memo 1998-367, 76 TCM (CCH) 664 at 668 (1998) (citation omitted), *aff'd without published*

*opinion* 202 F3d 264 (5th Cir 1999); *see also Lucid v. Comm'r*, TC Memo 1997-247, 73 TCM

(CCH) 2892 (1997), WL 287661 at *9 (June 2, 1997) (citations omitted) ("Petitioners' stated intention to make a profit did not comport with the fact that [the company] had nearly half a million dollars of accumulated costs by 1991. * * * The record does not reflect any sales of boating equipment that would have ameliorated the length of time necessary to break even.").

Lora acknowledged that she did not have a formal business plan, and her operational efforts, which were allegedly guided by and modified based on knowledge she obtained from formal and informal training and expert consultation, did not translate into increases in revenue over a six year period. Expenses were fairly constant during that period as well.

Plaintiffs kept simple accounting records (annual profit and loss statements), and according to the evidence, those records were not used to make informed business decisions. Lora, who actually operated LDW Investments, did make a few changes to her business, but the changes were minimal, and there was no evidence of a relationship between the changes she made and the entity's bottom line. Lora changed the type of sheep she used, but there was no testimony or other evidence submitted identifying when that change was made, and gross receipts between 2006, the second year of operation, and 2010, the second of the two years at issue, do not reveal a positive financial impact from the operational changes. (Def's Ex B at 1.) Expenses also remained high, relatively speaking ($39,775 and $40,350, respectively for 2009 and 2010, and higher for the three prior years.) (*Id*.) That is, income did not increase and expenses did not materially decrease.

There is no evidence that Lora carried on her activity "in a manner substantially similar to other activities of the same nature which are profitable." Treas Reg § 1.183-2(b)(1). The record is essentially silent on that point. The evidence shows that Lora did spend some money on advertising and promoted her dog training activities both by competing in sheep dog trial

competitions and attending her students' trial competitions. Advertising can be an indication of a profit motive. *See Strickland v. Commissioner (Strickland)*, TC Memo 2000-309, 80 TCM (CCH) 451, WL 1424243 (2000) (advertising horses for sale in local newspaper and entering horses in shows demonstrated that taxpayers conducted their activity in a for-profit manner); *Engdahl v. Commissioner*, 72 TC 659, 662-63 (1979) ("Horse shows are the best form of advertising for American saddle-bred horses."); *Golanty v. Commissioner*, 72 TC 411, 430-31 (1979) (taxpayers' failure to show horses indicated that taxpayers were not engaged in activity for profit), *aff'd* 647 F2d 170 (9th Cir 1981). However, advertising is but one component of a business. In this case, it is the only real, though inconsequential, evidence of a profit motive. And, the evidence did not show that the advertising increased profits or decreased expenses.

Because there is a lack of evidence that Lora's records were used to improve the performance of her financially unprofitable activity, the records do not indicate a profit motive. In this case, the first factor does not favor Plaintiffs' case for profit motive.

2.      *The expertise of the taxpayer or his advisors*

"Preparation for the activity by extensive study of its accepted business, economic, and scientific practices, or consultation with those who are expert therein, may indicate that the taxpayer has a profit motive where the taxpayer carries on the activity in accordance with such practices." Treas Reg § 1.183-2(b)(2).

Lora began her sheep dog activity with no knowledge or experience in the field. However, there is evidence that Lora took two lambing classes, an online course related to sheep rearing, regularly consulted with a few experts in the business of raising sheep, and read books and attended activities related to dog shepherding. Lora also regularly consulted with experts in the field of dog shepherding, and began working with her dogs in competitions, even winning an

event in 2013 that came with a $250 cash prize. The court accepts that Lora has some relevant business experience in the field of training and working with sheep dogs, and teaching others to work their sheep dogs. The second factor weighs in Plaintiffs' favor.

3. *The time and effort expended by the taxpayer in carrying on the activity*

"The fact that the taxpayer devotes much of his personal time and effort to carrying on an activity, particularly if the activity does not have substantial personal or recreational aspects, may indicate an intention to derive a profit. A taxpayer's withdrawal from another occupation to devote most of his energies to the activity may also be evidence that the activity is engaged in for profit. The fact that the taxpayer devotes a limited amount of time to an activity does not necessarily indicate a lack of profit motive where the taxpayer employs competent and qualified persons to carry on such activity."

Treas Reg § 1.183-2(b)(3).

The court is satisfied that the evidence aptly demonstrates that Lora spent a great deal of her personal time and effort to carrying on her sheep dog training activities. At the same time, the evidence also indicates significant personal and recreational aspects were involved in her undertaking. Lora grew up on ranch and was fortunate enough to acquire some land and develop her own small ranch. Lora's testimony and writings demonstrate that she loves both dogs and sheep, and her ranch was devoted to activities involving those animals. The regulation provides that the devotion of personal time "*may* indicate an intention to derive a profit." Treas Reg § 1.183-2(b)(3) (emphasis added). It can be countered by "personal or recreational aspects." *Id*. Lora did admittedly work hard at times. As Hoots stressed during trial, a great deal of physical exertion was required in raising the sheep, training the dogs, and keeping up the land. However, there was no testimony that Lora found that activity to be burdensome or unpleasant. In fact, it is apparent to the court that Lora derives great pleasure from all aspects of her sheep dog activity, including the physical labor required. Although Hoots repeatedly insisted that Lora's hard work demonstrates a profit motive, the court was not persuaded that the evidence in this case

suggested such a connection. As the US Tax Court noted in *Strickland*, "a taxpayer's enjoyment of an activity does not show that the taxpayer lacks a profit objective *if* the activity is conducted for profit as shown by other factors." TC Memo 2000-309, WL 1424243 at *9 (2000) (citing *Jackson v. Commissioner*, 59 TC 312, 317 (1972) (emphasis added).; Treas Reg § 1.183-2(b)(9)). As the court explains below, the factors in this case, taken as a whole, do not show the activity was conducted for profit.

In the court's experience, hard work and physical exertion are not limited to for-profit activities. It is not at all uncommon for an individual admittedly engaged in a not-for-profit hobby to expend considerable time and effort, including a great deal of physical labor, pursuing a hobby, whether it is restoring old cars, working with horses, farming the land, or any one of a host of other commonly engaged in hobbies; people commonly spend a lot of time and money pursuing such endeavors, driven by the pleasure or satisfaction they experience. And, in this case Lora was fortunate enough to have the time to devote to her dog and sheep activities, as her children had grown up and she did not have a paying job.

The facts of this case do not persuade the court that the time and effort Lora expended in carrying on her dog training activity (including rearing and ultimately selling sheep) were geared to a profit motive. Lora clearly has a passion for her dogs and sheep, and enjoys her small country acreage that she has developed over time by adding a barn, fencing, and other amenities. Lora's own writings, submitted into evidence by Defendant, aptly demonstrate her passion. Her testimony corroborated that fact. And, Lora has continued to operate her dog training activity continuously since 2005 without making any profit, and the evidence does not suggest the likelihood that the financial situation will change. On balance, that factor does not weigh in Plaintiffs' favor.

4.      *Expectation that assets used in activity may appreciate in value*

"The term profit encompasses appreciation in the value of assets, such as land, used in the activity.  Thus, the taxpayer may intend to derive a profit from the operation of the activity, and may also intend that, even if no profit from

current operations is derived, an overall profit will result when appreciation in the value of land used in the activity is realized * * *."

Treas Reg § 1.183-2(b)(4).

Hoots argued that the assets in this case related to the dog training activity have appreciated in value and that if they were liquidated, the gains from the sales of the associated assets would erase the losses and, with the prospect of positive income or true profits (income exceeding expenses) in the near future, this factor weighed in Plaintiffs' favor.  The court disagrees.

To begin with, the primary asset is the ranch itself.  The evidence does not indicate where the money used to purchase the land and add the barn and other improvements came from.  Nor is there evidence Plaintiffs operated the sheep dog activity on the nine acres with the intent of running a ranch and then selling an appreciated asset (the land and improvements).  Plaintiffs also have not established that Lora needed all or any land to conduct her activity.  Lora began by acquiring a dog and going to a sheep dog ranch to investigate and learn about working with sheep dogs.  That factor is neutral.

5.      *The success of the taxpayer in carrying on other similar or dissimilar activities*.

"The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity for profit, even though the activity is presently unprofitable."  Treas Reg § 1.183-2(b)(5).

There is no evidence in this case that Lora, who is the one that operated the dog training activity, known as LDW Investments Inc., has any prior experience in sheep dog training, raising

sheep, farming, or any other business. Lora did go to college, but she obtained a degree in nursing, not animal husbandry, agriculture, veterinary care, etc. There was no evidence presented as to whether Lora ever worked as a nurse or ran a nursing or nursing related business. There is certainly no evidence that Lora ever converted any business activity from unprofitable to profitable. Accordingly, that factor weighs against Plaintiffs.

6.  *The taxpayer's history of income or losses with respect to the activity.*

"A series of losses during the initial or start-up stage of an activity may not necessarily be an indication that the activity is not engaged in for profit. However, where losses continue to be sustained beyond the period which customarily is necessary to bring the operation to profitable status such continued losses, if not explainable, as due to customary business risks or reverses, may be indicative that the activity is not engaged in for profit. If losses are sustained because of unforeseen or fortuitous circumstances which are beyond the control of the taxpayer, such as drought, disease, fire, theft, weather damages, other involuntary conversions, or depressed market conditions, such losses would not be an indication that the activity is not engaged in for profit."

Treas Reg § 1.183-2(b)(6); *see also Knudsen*, 94 TCM (CCH) at 469.

Lora's business reported losses for each year since its formation in 2005. Lora's sworn testimony was that her primary business purpose was to work with people, teaching them how to train and "work" their sheep dogs, and how to "trial" them. Lora testified that she teaches those individuals how to train and work with their dogs, and to show them at sheep dog competition trials. Lora testified on cross-examination that she conducts 8 to 12 lessons per week. Lora reports income from "sales" of $7,087.64 on her 2009 profit and loss statement, and gross receipts or sales of $7,088 on her 2009 federal schedule C. (Ptfs' Exs 4 at 1, 6 at 1.) There was no testimony from Lora or any of Plaintiffs' other witnesses as to what, if anything, Lora charged for her dog training lessons.[3] According to the testimony and other evidence, Lora conducted

---

[3] Plaintiffs did exchange a 2010 Profit & Loss Detail statement as part of their collection of exhibits, but that document was not addressed at trial nor offered as an exhibit and cannot therefore be relied upon by the court. Moreover, if the document had been introduced and admitted, it would do little to shed light on Lora's dog training

sheep dog training classes, sheared her sheep and sold the wool, and sold the older sheep at auction. However, there is no evidence before the court showing that Lora tracked her earnings from those different activities, and no evidence as to how much money was earned from each of those activities in either of the years under appeal.

The history of losses sustained by Lora's sheep dog activities each year since its formation in 2005 suggests that Lora was not engaged in her activity for profit, but rather pursued a hobby. The court received no evidence on the amount of time typically required to bring a sheep dog training business to "profitable status." Hoots asserted that the series of losses incurred by Lora's company during each year of operation were a natural part of starting a business, hampered after several years (beginning in 2008 and lasting through 2010) by very poor economic conditions locally and nation-wide, but that Lora's experience and "morphed" business decisions promised financial profits in the years to come. There was no testimony or other evidence to support that assertion. That factor weighs against Plaintiffs.

7.      *The amount of occasional profits, if any, which are earned*

"The amount of profits in relation to the amount of losses incurred, and in relation to the amount of the taxpayer's investment and the value of the assets used in the activity, may provide useful criteria in determining the taxpayer's intent. An occasional small profit from an activity generating large losses, or from an activity in which the taxpayer has made a large investment, would not generally be determinative that the activity is engaged in for profit."

Treas Reg § 1.183-2(b)(7).

Plaintiff has never had a profitable year of operation. There have simply been no profits of any kind, occasional or otherwise. That factor weighs against Plaintiffs.

/ / /

/ / /

---

business without testimony explaining the entries.

8.    *The financial status of the taxpayer*

"The receipt of a substantial amount of income from sources other than the activity may indicate that the taxpayer does not intend to conduct the activity for profit." *Strickland*, TC Memo 2000-309, WL 1434243 at *9 (2000).  Here, Lora's dog training activity sustained years of losses, was never profitable, and likely could not have continued operating without the infusion of cash from other sources.  Although it is not definitively established, the testimony suggested that Plaintiff  David Withnell (David) likely funded the ranch and dog training activities with income from his automotive business.  Plaintiffs' 2009 joint federal tax return shows wages, taxable interest, dividends and other income of approximately $272,000, and in 2010, total income (excluding losses from Lora's dog training activity) of approximately $557,000.  (*See* Def's Ex B at 2, 9.)  Lora had no job or income, other than her dog training activity, an activity that generated years of losses.

In *Golanty*, the court quoted  Treas Reg § 1.183-2(b)(8), which provides that "[s]ubstantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit especially if there are personal or recreational elements involved." *Golanty*, 72 TC at 429. Here, Lora could not have continued with her sheep dog activity without a source of funding, which appears to have been David's earnings from his automotive business.  That is consistent with the regulations, which provide that consideration is given to whether a taxpayer has other income or an independent means of support when determining if there is a profit motive.  Treas Reg § 1.183-2(b)(8).

Based on the foregoing analysis, that factor does not suggest the activity was engaged in for profit, and accordingly weighs against Plaintiffs.

9. *Elements of personal pleasure or recreation*

"The presence of personal motives in carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved. On the other hand, a profit motivation may be indicated where an activity lacks any appeal other than profit."

Treas Reg § 1.183-2(b)(9). "[A] business will not be turned into a hobby merely because the owner finds it pleasurable; suffering has never been made a prerequisite to deductibility. 'Success in business is largely obtained by pleasurable interest therein.' " *Jackson v. Comm'r*, 59 TC 312, 317 (1972) (citation omitted).

The facts in this case tend to suggest an element of personal pleasure or recreation. According to her testimony, Lora loved working with the dogs, which she kept at the family home rather than the sheep dog training property, a nine-acre parcel with shelter and neighbors nearby to keep an eye and ear open for indications of trouble or risk to the dogs. Defendant brought out on cross-examination that Lora's blog, to which she herself testified, devoted a great deal of discussion to the joy and pleasure Lora derived, and the personal, emotional, and psychological benefits Lora experienced.

C. *Summary*

In the final analysis, when viewed as a whole, this case is best viewed as a not-for-profit hobby activity, made possible by independent funding, which was able to operate for years without profit because of income from David, and which provided Lora with substantial personal pleasure pursuing a life-long dream or calling. Lora was born and raised on a ranch, has had a life-long affinity for animals, had the resources available to buy property, add improvements (a barn, fencing, well, etc.) to create a ranch, begin purchasing dogs, and slowly establish a dog training activity. Profit does not seem to have been a motivation or concern. Accordingly, pursuant to the restrictions in IRC section 183 and the corresponding regulations, because Lora

had no profits from her sheep dog training activity, Plaintiffs are not entitled to deduct any of the expenses associated with that activity for 2009 or 2010.

### III. CONCLUSION

After carefully reviewing the evidence in light of the nine factors set forth in Treasury Regulation section 1.813-2(b), the court concludes that Plaintiffs have not established by a preponderance of the evidence that Lora's sheep dog training activities were engaged in for profit. The evidence presented persuades the court that Plaintiffs' primary objective, at least up to the years at issue (2009 and 2010), was something other than making a profit. Accordingly, Plaintiffs' claimed expenses associated specifically and solely with the sheep dog training activity are not allowed. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal for tax years 2009 and 2010 is denied.

Dated this ____ day of April 2014.

DAN ROBINSON
MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.*

*This document was signed by Magistrate Dan Robinson on April 7, 2014. The court filed and entered this document on April 7, 2014.*